James T. Capretz, Esq. (SBN 44442)
Don K. Ledgard, Esq. (SBN 208350)
**CAPRETZ & ASSOCIATES**
5000 Birch Street, Suite 2500
Newport Beach, California 92660
Telephone – (949) 724-3000
Facsimile – (949) 209-2090

Attorneys for Plaintiffs
Frank Grady and Renee Grady

FILED
2008 JUN -2 PM 3:36
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

BY FAX

| | |
|---|---|
| **FRANK GRADY and RENEE GRADY**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ACTAVIS TOTOWA LLC; ACTAVIS GROUP; MYLAN, INC.; MYLAN PHARMACEUTICALS, INC.; and UDL LABORATORIES, INC.**<br><br>**Defendants.** | **Civil Action No.** '08 CV 0980 DMS NLS<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs, by and through their attorneys, for the Complaint and Jury Demand against Defendants, state, aver and allege as follows:

**BACKGROUND**

1. This is an action for damages suffered by Plaintiff as a direct and proximate result of the Defendants' negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of their drug Digitek®.

## PARTIES, VENUE AND JURISDICTION

2. This is an action for damages that exceeds the jurisdictional minimum of this Court.

3. Venue is appropriate because Defendants Actavis Totowa LLC, Actavis Group, Mylan Inc., Mylan Pharmaceuticals, Inc. and UDL Laboratories, Inc. do business in the State of California and at all times relevant hereto, Plaintiffs Frank Grady and Renee Grady resided in the State of California.

4. This suit is brought under the United States Constitution and the common law of the State of California to recover damages and other relief, including the costs of suit and reasonable attorneys' and expert fees, for the injuries Plaintiffs sustained as a result of the Defendants' negligent and wrongful conduct in connection with the design, development, formulation, manufacturing, testing, packaging, promoting, marketing, distributing, labeling and/or sale of Digitek®.

5. Plaintiff **FRANK GRADY** at all times relevant hereto, was a resident of Carlsbad, California.

6. Plaintiff **RENEE GRADY** at all times relevant hereto, was a resident of Carlsbad, California and legally married to Plaintiff Frank Grady.

7. Defendant **ACTAVIS GROUP** (hereinafter "Defendants" or "Actavis Group"), is a foreign corporation, organized and existing under the laws of Iceland, and having a principal place of business at Dalshraun 1, 220 Hafnarfjordur, Iceland.

8. Defendant **ACTAVIS TOTOWA, LLC**, (hereinafter "Defendants" or "Actavis") is a corporation, incorporated and existing under the laws of the State of Delaware, with its principal place of business located at 990 Riverview Drive, Totowa, New Jersey 07512. Defendant is thus a resident and citizen of Delaware and New Jersey.

9. Upon information and belief, Actavis Totowa is a subsidiary, affiliate or division of Actavis Group.

10. Defendant **MYLAN, INC.**, (hereinafter "Defendants" or "Mylan") is a corporation, incorporated and existing under the laws of the State of Pennsylvania, with its principal place of business located at 1500 Corporate Drive, Canonsburg, PA 15317.

11. Defendant, **MYLAN PHARMACEUTICALS, INC.**, (hereinafter "Defendants" or "Mylan Pharmaceuticals") is a corporation, incorporated and existing under the laws of the State of West Virginia, with its principal place of business located at 781 Chestnut Ridge Road, Morgantown, West Virginia, 26505.

12. Defendant, **UDL LABORATORIES, INC.**, (hereinafter "Defendants" or "UDL") is a corporation, incorporated and existing under the laws of the State of Illinois, with its principal place of business located at 1718 Northrock Court, Rockford, Illinois, 61103.

13. Upon information and belief, Mylan Pharmaceuticals and UDL are subsidiaries, affiliates or divisions of Mylan, Inc.

14. At all times relevant, Defendants were engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the drug Digitek®. Plaintiffs allege on information and belief that Defendants do business in California and this country.

15. Plaintiffs hereby incorporate by reference as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

///

///

**FACTUAL ALLEGATIONS**

16. Digitek® is one of the brand name preparations of the generic drug digoxin (also known as Digitalis). Digoxin is a purified cardiac glycoside extracted from the foxglove plant, *Digitalis lanata*.

17. Digoxin is used to increase the strength and vigor of the heart muscle contractions and is useful in the treatment of congestive heart failure.

18. Digoxin also slows the electrical conduction between the atria and ventricles and is useful in treating abnormally rapid atrial rhythms such as atrial fibrillation, atrial flutter and atrial tachycardia.

19. There is very little cushion between a therapeutically beneficial level of digoxin and a toxic level of digoxin.

20. Digoxin toxicity can occur from a single exposure or chronic overmedication.

21. Digoxin toxicity can cause potentially life-threatening heart rhythm disturbances, as well as nausea, vomiting, diarrhea, dizziness, confusion, loss of appetite, visual disturbances, low blood pressure, cardiac instability, irregular pulse, heart palpitations and bradycardia. At its most severe, death can result from excessive digoxin intake.

22. The first commercially available digoxin product approved by the Food and Drug Administration ("FDA") went on the market in 1952.

23. On April 25, 2008, the FDA announced that Actavis Totowa, manufacturer of Digitek® brand digoxin tablets, had initiated a Class 1 nationwide recall of all strengths of Digitek® tablets (*see*: http://www.fda.gov/oc/po/firmrecalls/actavis04_08.html).

///

24. The Digitek® tablets were commercially released with twice the appropriate thickness, and hence, twice the approved level of active ingredient than is appropriate.

25. Several reports of illness and injury related to Digitek® have been reported to the FDA.

26. The Digitek® tablets were manufactured by Actavis Totowa, LLC, the United States manufacturing division of the international Actavis Group.

27. The Digitek® tablets were distributed by Mylan Pharmaceuticals, Inc., under a "Bertek" label and by UDL Laboratories, Inc., under a "UDL" label.

28. With no contributory negligence on his part, Plaintiff Frank Grady ingested Digitek®, a pharmaceutical product designed, manufactured, promoted, distributed and/or sold by Defendants.

29. As a direct, proximate and legal result of the negligence, carelessness and other wrongdoing of the Defendants as described herein, Plaintiff Frank Grady suffered injury from the use of Digitek®.

30. As a direct, proximate and legal result of the negligence, carelessness, and other wrongdoing of the Defendants, as described herein, Plaintiff Frank Grady required reasonable and necessary health care, attention and services, and incurred medical, incidental, and service expenses thereupon.

## FIRST CAUSE OF ACTION

**Products Liability**
**Defective Manufacturing**

31. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

///

32. At all times material to this action, the Defendants were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Digitek®.

33. At all times material to this action, Defendants' Digitek® was expected to reach, and did reach, consumers in the State of California and throughout the United States without substantial change in the condition in which it was sold.

34. At all times material to this action, Digitek® was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

a. When placed in the stream of commerce, Digitek® contained manufacturing defects, which rendered the product unreasonably dangerous;

b. Digitek®'s manufacturing defects occurred while the product was in the possession and control of the Defendants;

c. Digitek® was not made in accordance with the Defendants' specifications or performance standards;

d. Digitek®'s manufacturing defects existed before it left the control of the Defendants.

35. As a direct and proximate result of the subject product's manufacturing defects, Plaintiff Frank Grady suffered severe and permanent physical injuries. As a further direct and proximate result of the manufacturing Defendants' wrongdoing and actions Plaintiff Frank Grady will continue to suffer harm, and economic loss.

**SECOND CAUSE OF ACTION**
**Products Liability**
**Design Defect**

36. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

37. At all times material to this action, the Defendants were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Digitek®.

38. Digitek® is defective and unreasonably dangerous to consumers.

39. Digitek® is defective in its design or formulation in that it is not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

40. At all times material to this action, Digitek® was expected to reach, and did reach, consumers throughout the United States and California without substantial change in the condition in which it was sold.

41. At all times material to this action, the subject product was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants, and/or their corporate predecessors in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

a. When placed in the stream of commerce, Digitek® contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting Plaintiff, to risks that exceeded the benefits of the subject product, including but not limited to, the development of renal failure and death;

b. When placed in the stream of commerce, Digitek® was defective in design and formulation, making the use of the product more dangerous than an ordinary consumer would expect, and more dangerous than the risks associated with the other products on the market;

c. Digitek®'s design defects existed before it left the control of the Defendants, and/or their corporate predecessors;

d. Defendants' product was insufficiently tested;

e. Defendants' product caused harmful side effects that outweighed any potential utility; and

f. Defendants' product was not accompanied by adequate instructions and/or warnings to fully apprise consumers of the full nature and extent of the risks and side effects associated with its use, thereby rendering Defendants liable to Plaintiff.

42. In addition, at the time the subject products left the control of the Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Plaintiff's injuries without impairing the reasonably anticipated or intended function of the product. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of Plaintiff's injuries without substantially impairing the product's utility.

43. As a direct and proximate result of the subject product's design defects, Plaintiff Frank Grady suffered severe and permanent physical injuries. As a further direct and proximate result of the manufacturing Defendants' wrongdoing and actions Plaintiff Frank Grady will continue to suffer harm, and economic loss.

**THIRD CAUSE OF ACTION**
**Products Liability**
**Failure to Warn**

44. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

45. Defendants' product Digitek® was defective and unreasonably dangerous when the product left the possession of the Defendants in that it contained warnings insufficient to alert consumers, including Plaintiff, of the dangerous risks of over-dosage from defective Digitek® tablets and reactions associated with over-dosage of Digitek®, notwithstanding that the Defendants knew or should have known that the product was highly dangerous and created significant risks of serious bodily harm, including death to humans, if an over-dosage occurred.

46. Plaintiff ingested Digitek® and used the subject product for its intended purpose.

47. Neither Plaintiff Frank Grady, nor his physicians could have discovered any defect in the subject product through the exercise of reasonable care.

48. The Defendants, as manufacturers and/or distributors of the subject product, are held to the level of knowledge of an expert in the field.

49. The warnings that were given by the Defendants were not accurate, clear and/or were ambiguous.

50. The warnings that were given by the Defendants failed to properly warn physicians and patients of the increased risks associated with Digitek®.

51. The warnings that were given by the Defendants failed to properly warn consumers/persons ingesting the subject product of the increased risks of injury and death from over-dosage.

52. Plaintiff reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

53. The Defendants had a continuing duty to warn Plaintiff of the dangers associated with Digitek® manufactured and supplied by Defendants. Digitek® was further defective due to inadequate post-marketing warning, labeling, or instruction because, after Defendants knew or should have known of the risk of serious bodily harm and death from the ingestion of defective Digitek®, Defendants failed to provide an adequate warning to persons such as Plaintiff and/or their health care providers of the product, knowing the product could cause serious injury and death.

54. Had Plaintiff and/or his physicians received adequate warnings regarding the risks of over-dosage of Digitek®, the subject product would not have been ingested by Plaintiff.

55. As a direct and proximate result of the subject product's defective and inappropriate warnings, Plaintiff Frank Grady suffered severe and permanent physical injuries. As a further direct and proximate result of the product's defective and inappropriate warnings, wrongdoing and actions of Defendants described herein, Plaintiff Frank Grady will continue to suffer loss, harm, and economic loss.

**FOURTH CAUSE OF ACTION**
**Breach of Express Warranty**

56. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

57. Defendants expressly warranted that Digitek® was a safe and effective drug.

58. The Digitek® manufactured and sold by Defendants did not conform to these express representations because it caused serious injury and/or death to persons

when administered in recommended dosages.

59. As a direct and proximate result of Defendants' breach of warranty, Plaintiff Frank Grady suffered severe and permanent physical injuries. As a further direct and proximate result of Defendants' breach of warranty, wrongdoing and other actions of Defendants described herein, Plaintiff Frank Grady will continue to suffer harm, and economic loss.

**FIFTH CAUSE OF ACTION**
**Negligence**

60. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

61. Defendants had a duty to exercise reasonable care in the design, development, formulation, manufacture, marketing, promotion, sale, labeling and/or distribution of Digitek® into the stream of commerce, including a duty to assure that the product did not pose significant risk of injury or death.

62. Defendants breached their duty of reasonable care to Plaintiff Frank Grady.

63. As a direct and proximate result of Defendants negligence, Plaintiff Frank Grady suffered injury and will continue to suffer harm.

**SIXTH CAUSE OF ACTION**
**Loss of Consortium**

64. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

65. At all times relevant hereto the Plaintiff Frank Grady's spouse, Renee Grady, (hereinafter referred to as "Spouse Plaintiff") has suffered injuries and losses as a result of Plaintiff Frank Grady's injuries.

///

66. For the reasons set forth herein, Spouse Plaintiff has suffered and will continue to suffer the loss of her loved one's support, companionship, services, society, love, and affection.

67. Spouse Plaintiff alleges her marital relationship has been impaired and depreciated, and the marital association between husband and wife has been altered.

68. Spouse Plaintiff has suffered great emotional pain and mental anguish.

69. As a direct and proximate result of Defendants' wrongful conduct, Spouse Plaintiff has sustained and will continue to sustain damages for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial. Defendants are liable to Spouse Plaintiff jointly and/or severally for all general, special and equitable relief to which Spouse Plaintiff is entitled by law.

**SEVENTH CAUSE OF ACTION**
**Punitive Damages Act**

70. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

71. At all times material hereto, Defendants knew or should have known that their product was highly and unreasonably dangerous if over-dosage should occur.

72. Defendants' intentional and/or reckless failure to disclose information regarding Digitek® deprived Plaintiff Frank Grady of necessary information to enable him to weigh the true risks of using Defendant's Digitek® against its benefits.

73. At all times material hereto, Defendants knew and recklessly disregarded the fact that Digitek® was potentially capable of causing debilitating and potentially lethal side effects in patients and possibly death.

74. Defendants knew of Digitek®'s defective and unreasonably dangerous nature, as set forth herein, but continued to design, develop, manufacture, market,

distribute and sell it so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff, in conscious and/or reckless disregard of the foreseeable harm caused by their product.

75. As a direct and proximate result of Defendants' conscious and deliberate disregard for the rights and safety of the public such as Plaintiff, as alleged above, Plaintiff Frank Grady suffered severe and permanent physical injuries. As a further direct and proximate result of Defendants' conscious and deliberate disregard for the rights and safety of the public such as Plaintiff, as alleged above, wrongdoing and other actions of Defendants described herein, Plaintiff Frank Grady will continue to suffer injury, harm, and economic loss.

76. The aforesaid conduct of Defendants was committed with knowing, conscious, and deliberate disregard for the rights and safety of the public, including Plaintiff, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and deter them from similar conduct in the future.

WHEREFORE, the Plaintiffs demand compensatory damages against Defendants in an amount in excess of the statutory limit for arbitration together with attorneys' fees and costs.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs pray for judgment against Defendants and relief as follows in amounts to be determined at trial:

1. Compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

2. Compensatory damages in excess of the jurisdictional amount, including, but not limited to medical expenses, lost future income, loss of earning capacity, out of pocket expenses, and other economic damages in an amount to be determined at trial of this action;
3. Pre- and post-judgment interest;
4. Attorneys' fees, expenses, and costs of this action as allowed by law;
5. Treble damages;
6. Punitive/Exemplary damages; and
7. Such further relief as this Court deems necessary, just, and proper.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all issues.

Dated: June 2, 2008

Respectfully submitted,

By: ______________________

James T. Capretz, Esq. (CA Bar No. 44442)
Don K. Ledgard, Esq. (CA Bar No. 208350)
**CAPRETZ & ASSOCIATES**
5000 Birch Street, Suite 2500
Newport Beach, CA 92660-2139
T-(949) 724-3000 F-(949) 209-2090

Russ M. Herman, Esq. (LA Bar #6819)
Leonard A. Davis, Esq. (LA Bar #14190)
**HERMAN, HERMAN,**
**KATZ & COTLAR LLP**
**HERMAN GEREL LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
T-(504) 581-4892 F-(504) 561-6024

*Attorneys for Plaintiffs*
*Frank Grady and Renee Grady*

JS 44 (Rev. 12/07)

FILED

# CIVIL COVER SHEET

3: 32

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

FRANK GRADY and RENEE GRADY

(b) County of Residence of First Listed Plaintiff San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)

James T. Capretz, Esq. c/o Capretz & Associates, 5000 Birch Street, #2500, Newport Beach, CA 92660 (949) 724-3000

**DEFENDANTS**

ACTAVIS TOTOWA LLC; ACTAVIS GROUP; MYLAN, INC.; MYLAND PHARMACEUTICALS, INC. AND UDL

CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

County of Residence of First Listed Defendant Passaic
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

'08 CV 0980 DMS NLS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

BY FAX

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☒ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☒ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 USC Section 1332(a)

Brief description of cause: Plaintiff's injury was proximately caused by ingestion of Digitek

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 DEMAND $

CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE DOCKET NUMBER

DATE 6/2/08 SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # 151453 AMOUNT $350 APPLYING IFP JUDGE MAG. JUDGE

TAC 6/2/08